United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GUICHARD, | |
| Plaintiff, | No. C 04-4363 JSW |
| v. | **ORDER GRANTING MPAA DEFENDANTS' MOTION TO DISMISS AND STUDIO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| MANDALAY PICTURES, LLC, d/b/a MANDALAY ENTERTAINMENT, METRO-GOLDWYN-MAYER STUDIOS, INC., et al., | |
| Defendants. | |

Now before the Court is the motion by Defendants Motion Picture Association of America, Inc., erroneously named as MPAA; Sony Pictures Entertainment Inc.; Warner Bros. Entertainment, Inc.; Walt Disney Pictures and Television, erroneously named as Buena Vista Pictures Distribution; Paramount Pictures Corporation; Twentieth Century Fox Film Corporation; and Universal Studios LLLP (collectively "MPAA Defendants") to dismiss Plaintiff's First Amended Complaint ("FAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

1    Also before the Court is the motion by Defendants Metro-Goldwyn-Mayer Studios, Inc. ("MGM") and Mandalay Pictures LLC ("Mandalay") (collectively "Studio Defendants") for judgment on the pleadings on the fifth sixth, seventh and eighth claims pursuant to Federal Rule of Civil Procedure 12(c).

Having carefully read the parties' papers and considered the arguments and the relevant legal authority, the Court hereby GRANTS the MPAA Defendants' motion to dismiss without leave to amend on all claims pending against them and GRANTS the Studio Defendants' motion for judgment on the pleadings on the fifth sixth, seventh and eighth claims against them.

## BACKGROUND

In his initial complaint filed on October 15, 2004, Plaintiff named only the Studio Defendants and asserted claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a), for breach of confidentiality, common law misappropriation, and violations of California Business and Professions Code § 17200. In his amended complaint filed December 13, 2004, Plaintiff named the MPAA Defendants for the first time and added claims against them and the Studio Defendants for violation of the Sherman and Cartwright Acts, as well as for violation of the California Business and Professions Code § 17200. Plaintiff alleges that Defendant Motion Picture Association of America is a "trade association of the American film industry" and the other MPAA Defendants are six of the seven members of the Association. (FAC, ¶ 30.) Plaintiff alleges that MPAA members constitute a majority of the United States theatrical motion picture production and distribution markets. (FAC, ¶¶ 31, 43.)

Plaintiff alleges that in 1925 the MPAA established the Title Registration Bureau ("TRB") that functions as the central registration bureau for titles of motion pictures in the United States. (FAC, ¶ 32.) The TRB promulgates a set of rules ("TRB Rules") which require all members to register their titles for theatrical motion pictures prior to their release. (FAC, ¶ 32; TRB Rules §§ 2.2.3, 3.1 (attached to Motion Brief as Appendix 1).) TRB members are prohibited from using a particular title unless they have priority granted by prior registration. (FAC, ¶ 36; TRB Rules § 5.1.2.) Once a title is registered, an identical title cannot be used for a

theatrical motion picture by any other MPAA member or signatory without a waiver from the initial title registrant. (FAC, ¶ 36, TRB Rules § 4.3.) The MPAA members all participate in the TRB, although the TRB is open to non-members if they sign an agreement to join, agree to follow the TRB Rules, and pay an annual fee. (FAC, ¶ 30; TRB Rules §§ 2.2.4, 2.4.1.)

Plaintiff contends that he wrote a screenplay in 1993 called "Into The Blue," an underwater action and adventure story about searching the waters off Florida and the Bahamas for a sunken ship and treasure. (FAC, ¶¶ 21-22.) Plaintiff contends that in 1997 he submitted his screenplay to Mandalay who declined to pursue its production. (FAC, ¶¶ 24-25.) Plaintiff claims that the Studio Defendants misappropriated his title, ideas, and elements of the screenplay by making a similar motion picture and improperly registered the title with the TRB when they knew, or should have known, that the title belonged to Plaintiff. (FAC, ¶¶ 60-61.) In 1999, Plaintiff changed the title of his screenplay to "In2Blue" and claims still to be developing and producing his theatrical motion picture based on his original script. (FAC, ¶ 21, 5.)

According to Plaintiff's complaint, Defendant Mandalay registered the title "Into The Blue" with the TRB in June 2002 and on MGM registered the identical title in May 2003. (FAC, ¶¶ 34, 35.) Also, in 2003, Mandalay waived its rights to the title with the TRB, thereby putting MGM in priority position. (FAC, ¶ 36.) Plaintiff contends that the prior registrations of the motion picture title preclude Plaintiff from having the member studios produce his screenplay without receiving a waiver from MGM. (FAC, ¶ 37.) He claims that the TRB Rules function as a monopoly and unreasonable restraint of trade in violation of the Sherman Act, as well as the Cartwright Act and California Business and Professions Code § 17200.

## ANALYSIS

**A.    Legal Standard on Motion to Dismiss.**

A motion to dismiss for failure to state a claim will be denied unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,*

3

80 F.3d 336, 337-38 (9th Cir. 1996). Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). The Court is not, however, bound to accept as true conclusory allegations of law or legal conclusions couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286 (1986); *Arpin v. Santa Clara Transp. Agency,* 261 F.3d 912, 923 (9th Cir. 2001) (internal quotation omitted). For private antitrust claims, if the facts "do not at least outline or adumbrate a violation of the Sherman Act, the plaintiffs will get nowhere merely by dressing them up in the language of antitrust." *Rutman Wine Co. v. E&J Gallo Winery,* 829 F.2d 729, 736 (9th Cir. 1987). A claimant must, at a minimum, sketch the outline of the antitrust violation with allegations of supporting factual detail. *Les Shockley Racing, Inc. v. National Hot Rod Ass'n,* 884 F.2d 504, 508 (9th Cir. 1989).

**B.   Plaintiff Has Failed to State a Claim Under the Sherman Act.**

In order to plead a claim under the Sherman Act, Plaintiff must allege a restraint on competition that harms competition in the relevant market. *See McClinchy v. Shell Chem. Co.*, 845 F.2d 802, 812-13 (9th Cir. 1988) ("It is the impact upon competitive conditions in a definable market which distinguishes the antitrust violation from the ordinary business tort. [The] failure to allege injury to competition is a proper ground for dismissal by judgment on the pleadings.")

The essence of Plaintiff's claims against the MPAA Defendants is that the TRB Rules serve as a monopolistic structure precluding the production and distribution of motion pictures by small, independent film makers. However, the uncontested facts are that the TRB Rules do not prevent members (or non-members) from distributing Plaintiff's, or any other independent film maker's, motion picture. At most the rules restrict MPAA members from producing a motion picture with a title identical to one accorded priority under the TRB Rules. (FAC, ¶ 36, TRB Rules §§ 2.2.3, 3.1, 5.1.2.) Restricting the use of a title does not harm competition in the relevant markets alleged by Plaintiff, the United States motion picture production or distribution markets. (FAC, ¶¶ 73, 91.)

The TRB Rules effectively manage, among its members, the priority of rights given to the users of various titles for motion pictures. Such mechanism for priority of rights is similar (although not identical) to the assertion of trademark rights.[1] As a matter of law, possessing and asserting priority of trademark rights does not harm competition in the market associated with the mark. *See Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 56 (2nd Cir. 1997) (holding that a trademark is, by its nature, non-exclusionary, and "does not confer a legal monopoly on any good or idea; it confers rights to a name only.") Because a trademark, or in this case, a priority to use of a motion picture title, "'merely enables the owner to bar others from use of the mark, as distinguished from competitive manufacture and sale of identical goods bearing another mark, . . . the opportunity for effective antitrust misuse of a trademark, as distinguished from collateral anti-competitive activities on the part of the manufacturer or seller of the goods bearing the mark, is so limited that it poses a far less serious threat to the economic health of the nation.'" *Id.* (citing *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 298 F. Supp. 1309, 1314 (S.D.N.Y. 1969).) A trademark agreement does no more than regulate how a certain name may be used and does not in any way restrict competition in the production or sale of a competing good with a different name. *Id.* at 57; *see also California Packing Corp. v. Sun-Maid Raisin Growers of California*, 165 F. Supp. 245, 250-51 (S.D. Cal. 1958) (holding that private agreement limiting the use of a certain mark does not prevent competitor from engaging in competitive production and sales in the market, but only restricts the use of the name, and therefore does not raise antitrust concerns).

---

[1] In his written submissions as well as at oral argument on the motion, Plaintiff asserts that the TRB Rules effectively create a private Patent and Trademark Office and grant a "language monopoly" or a "monopoly of words from the dictionary." (Opp. Br. at 7; FAC, ¶ 85.) The MPAA's private arrangement to prioritize the use of motion picture titles, as Plaintiff concedes in his complaint, is designed "to avoid confusion in the marketplace between competing projects with identical or similar marks." (FAC, ¶ 84.) Such private arrangement serves its members by prioritizing the right to use a certain title among its members; it does not constitute a private PTO and such prioritizing does not constitute a monopoly in the relevant market. There is no relevant market made up of words, or titles, and the relevant market designated by Plaintiff – the United States motion picture production and distribution – is not affected by the restrictions imposed by the TRB Rules, as discussed above.

5

1    Restrictions on the use of a title do not ultimately bear on the production or distribution
2 of the motion picture associated with that title.  Even accepting as true all of Plaintiff's
3 assertions, the TRB Rules do not function to restrict its members from producing or distributing
4 Plaintiff's motion picture project and do not prevent Plaintiff from selling his motion picture
5 project to member or non-member producers or distributors or from entering those markets
6 himself.  As Plaintiff contends, the TRB Rules are apparently designed to avoid confusion in the
7 marketplace as to those motion pictures its members or signatories decide to market or
8 distribute.  (FAC, ¶ 84.)  The TRB Rules, therefore, have no effect on the motion picture
9 production or distribution markets.

10    Having failed to demonstrate that the rules harm competition in the relevant market,
11 Plaintiff cannot state a claim under the Sherman Act.  Because Plaintiff cannot allege facts
12 sufficient to demonstrate that the MPAA Defendants' rules harm competition, leave to amend
13 would be futile and is denied.  *See Rutman Wine*, 829 F.2d at 738 (request for leave to amend
14 should be denied if amendment would be futile).

15 **C.    Plaintiff Lacks Antitrust Standing.**

16    The fact that Plaintiff lacks antitrust standing serves as an alternate basis for dismissal of
17 Plaintiff's claims against the MPAA Defendants.  The Clayton Act authorizes a private
18 individual to bring suit under the antitrust laws if that individual has been "injured in his
19 business or property by reason of anything forbidden in the antitrust laws."  15 U.S.C. § 15.
20 Only individuals who possess antitrust standing by virtue of having suffered such injury may
21 sue to redress an antitrust violation.  *Associated General Contractors of California, Inc. v.*
22 *California State Council of Carpenters*, 459 U.S. 519, 529-535 (1983); *see also Cargill, Inc. v.*
23 *Monfort of Colorado, Inc.*, 479 U.S. 103, 113 (1986) ("a private plaintiff must allege threatened
24 loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that
25 which makes defendants' acts unlawful.'") (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat,*
26 *Inc.*, 429 U.S. 477, 497 (1977)).

27    First, as addressed above, restrictions on the use of any particular title do not prevent
28 Plaintiff, or any other screenwriter, from entering the market for motion picture production or

distribution, and therefore do not restrain competition in those relevant markets. *See Clorox*, 117 F.3d at 56. Second, Plaintiff cannot allege any specific injury he has suffered as a result of the MPAA Defendants' conduct. Plaintiff alleges that he wrote his screenplay nine years before Mandalay registered "Into The Blue" with the TRB and did not meet with any success producing or distributing his motion picture project during that time period. (FAC, ¶¶ 21, 34.) Further, although Plaintiff contends that film projects often take years to come to successful fruition, he has not alleged, and cannot allege, that since Mandalay's registration in 2002 or MGM's registration in 2003, any motion picture producer or distributor has rejected Plaintiff's project on the basis that a similar title has been granted priority among MPAA members by virtue of prior title registration. Therefore, there is no factual support for a claim for direct injury as a result of the MPAA Defendants' conduct.[2]

Plaintiff has not alleged, and cannot in good faith allege, facts sufficient to demonstrate that he has the requisite standing for his federal antitrust claims against the MPAA Defendants. Because Plaintiff cannot allege facts demonstrating injury as a result of anticompetitive conduct by defendants, leave to amend on this basis would also be futile and is denied. *See Rutman Wine*, 829 F.2d at 738 (request for leave to amend should be denied if amendment would be futile).

**D.     Other California Causes of Action.**

Plaintiff has also alleged two California state law claims against the MPAA Defendants, under the Cartwright Act and California Business and Professions Code § 17200. In the absence of anticompetitive conduct capable of harming competition in the relevant market, Plaintiff's Cartwright Act claim fails. *See, e.g., Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1476-77 (9th Cir. 1986). In addition, the claim falters due to Plaintiff's lack of standing to assert antitrust injury. Furthermore, Plaintiff's state unfair competition claim fails because it is not based upon "conduct that threatens an incipient violation of an antitrust law, or violates the

---

[2] In addition, Plaintiff has not alleged in his complaint that he attempted to register his title with the TRB and only represented at oral argument that his attempt to register was frustrated by his own refusal to abide by the terms required for registration. Without having tried to benefit from the TRB's registration process, Plaintiff cannot contend that he has suffered from rejection of the registration of his own title.

7

1 policy or spirit of one of those laws because its effects are comparable to or the same as a
2 violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*
3 *Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 187 (1999); *see also*
4 *Kentmaster Mfg. Co. v. Jarvis Products Corp.*, 146 F.3d 691, 695 (holding that plaintiff's
5 failure to allege harm to competition was fatal to Section 17200 just as it was to Sherman Act,
6 Section 2 claims).

**E.    Studio Defendants' Motion for Judgment on the Pleadings.**

The Studio Defendants join the arguments of the MPAA Defendants and move for judgment on the pleadings as to the fifth, sixth, seventh and eighth causes of action pending against them. Judgment on the pleadings is appropriate where, even if all the material facts in the complaint are true, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). For the same reasons discussed herein, Plaintiff has failed to state a claim upon which relief can be granted and lacks antitrust standing as to those same claims pending against the Studio Defendants. Therefore, the Studio Defendants' motion for judgment on the pleadings is granted.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the MPAA Defendants' motion to dismiss without leave to amend on all claims pending against them and GRANTS the Studio Defendants' motion for judgment on the pleadings on the fifth sixth, seventh and eighth claims against them.

**IT IS SO ORDERED.**

Dated: August 22, 2005

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

8